**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

**CARMEN Y. MARTINEZ,**
Plaintiff,

v. 2:25-cv-668-KCD-NPM

**COMMISSIONER OF SOCIAL SECURITY,**
Defendant.

---

## REPORT AND RECOMMENDATION

Plaintiff Carmen Martinez seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the administrative proceedings (Doc. 12), Martinez filed an opening brief (Doc. 18), the Commissioner responded (Doc. 19), and Martinez replied (Doc. 20). As discussed in this report, the decision of the Commissioner should be reversed.

### I. Eligibility for Disability Benefits and the Administration's Decision

#### A. Eligibility

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death or that have lasted or can be expected to last for a continuous period of not less than

twelve months.[1] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[2] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[3]

### B. Factual and procedural history

On February 16, 2022, Martinez filed an application for disability insurance benefits. (Tr. 219–22). She asserted an onset date of January 1, 2021, alleging disability due to the following: back pain, spinal stenosis, sciatica, degenerative disc disease, osteoarthritis, carpal tunnel, fibromyalgia, anxiety, bipolar disorder, depression, gastroesophageal reflux disease, remission from breast cancer, and incontinence. (Tr. 219, 273). As of the alleged onset date, Martinez was 45 years old

---

[1] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. § 404.1505.

[2] *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 404.1594(b)(4) (defining functional capacity to do basic work activities).

[3] *See* 20 C.F.R. § 404.1511.

and had two years of college. (Tr. 219, 274). She previously worked as an administrative assistant and in customer service. (Tr. 274).

On behalf of the administration, a state agency[4] reviewed and denied Martinez's application initially on January 23, 2023, and upon reconsideration on February 19, 2024. (Tr. 145–49, 151–54). At Martinez's request, Administrative Law Judge (ALJ) Maria Northington held a hearing during which Martinez was represented by an attorney. (Tr. 42–81). On August 22, 2024, the ALJ issued a decision finding Martinez not disabled. (Tr. 14–35). The administration's Appeals Council denied Martinez's request for review. (Tr. 1–6). She then brought the matter to this court, and the case is ripe for judicial review.

### C. The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal

---

[4] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. § 404.1503(a).

quotation omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is relieved of the burden of production during step five as to whether there are enough jobs someone like the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. § 404.1512. In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably

rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found that Martinez had not engaged in substantial gainful activity since January 1, 2021, the alleged onset date. (Tr. 19). At step two, the ALJ characterized Martinez's severe impairments as: rheumatoid arthritis, lumbar L5/S1 right paracentral disc protrusion encroaching the S1 nerve lumbar stenosis with denervation and radiculopathy, fibromyalgia, migraines, bipolar disorder II, depression, anxiety, panic disorder, morbid obesity and Grade I breast cancer in remission diagnosed in January 2023 status post partial lumpectomy with no chemotherapy and no radiation (Tr. 20). At step three, the ALJ determined Martinez did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 21).

As a predicate to step four, the ALJ arrived at the following RFC:

> [P]erform Light work with the ability to occasionally lift and/or carry up to 20 pounds as defined in the regulations, as well as lift/carry 10 pounds frequently. This includes sedentary work as defined in the regulations. The claimant has no limits for sitting in an eight-hour workday. She is capable of standing and/or walking for up to six hours in an eight-hour workday. She is able to perform occasional postural functions of climbing ramps/stairs, kneeling, and stooping. She is to perform no crawling, no crouching, and no climbing of ladders/ropes/scaffolds. In the course of work, she should be allowed the ability to optionally alternate between sitting and standing about every 30 to 60 minutes, but such would not cause her to be off-task or leave workstation. The claimant is to perform no constant fingering, feeling, grasping, and handling manipulations with the bilateral upper extremities, however, frequent fingering, feeling, grasping, and handling manipulations remain intact. Secondary to mental diagnoses and commiserate [*sic*] with her completion of full-time cosmetology school in 2023, the claimant is able to

> understand, remember and carry out detailed, but non-highly complex instructions and tasks. The claimant is able to make judgments regarding work-related decisions, complete tasks in a timely manner and manage routine job stressors. The claimant is able to maintain a routine work schedule and handle changes in non-highly complex job environments. The claimant is able to control their emotions in a work environment. The claimant is able to respond appropriately to the public, supervisors, coworkers, and work situations. The claimant is able to complete detailed instructions consistent with these related mental functions. (Tr. 25).

Consequently, the ALJ found that Martinez could perform her past relevant work as a customer service representative or general office clerk. (Tr. 32). Going further, the ALJ found at step five that Martinez could also perform other work that exists in significant numbers in the national economy. (Tr. 33). In support, a vocational expert testified that an individual of Martinez's age, education, work experience, and RFC could perform work similar to the following representative occupations:

- *Routing Clerk,* DOT #222.687-022, light, SVP 2, with 42,000 jobs;
- *Small Products Assembler,* DOT #706.684-022, light, SVP 2, with 12,000 jobs;
- *Office Helper*, DOT #239.567-010, light, SVP 2, with 13,800 jobs;
- *Call-out Operator*, DOT # 237.367-014, sedentary, SVP 2, with 20,600 jobs.[5]

[5] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to the time it takes—during or before a job, such as prior experience or education—to develop necessary abilities, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled. The expert's job numbers were for the national economy.

(Tr. 34). Thus, for purposes of the Act, the ALJ concluded Martinez was not disabled from January 1, 2021, the alleged onset date, through August 22, 2024, the date of the decision. (Tr. 35).

## II. Analysis

This appeal asks whether the ALJ committed reversible error by analyzing the alleged period of disability based on erroneous findings and post-disability events.

### A. Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers

to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

**B. The ALJ's decision hinges on erroneous findings and irrelevant facts.**

After she filed her application, but before the ALJ hearing, Martinez became a full-time cosmetology student in August 2023. Conceding she was not disabled for purposes of the Act when she was well enough to attend cosmetology school, Martinez timely alleged a "closed period" of disability—January 1, 2021, to August 1, 2023—that ended before she went to school.

In a closed-period case, the administration determines whether an applicant for disability benefits was disabled for a finite period, which started and stopped prior to the date of decision. In other words, disability benefits are available for non-permanent impairments so long as the claimant is precluded from engaging in substantial gainful activity for 12 months or more. The claimant in a closed-period case would receive a lump-sum check for the period of disability but would not be

found entitled to current monthly benefits. *See generally Pickett v. Bowen*, 833 F.2d 288, 289 n.1 (11th Cir. 1987).

Despite the before-school / after-school demarcation and the real-world fact that Martinez began cosmetology school after the closed period, the ALJ analyzed Martinez's claim as if she not only attended but also completed cosmetology school during the closed period. Most notably, the RFC expressly assessed all of Martinez's mental limitations *during the closed period* as being commensurate with the "completion of full-time cosmetology school," even though Martinez completed cosmetology school nearly a year after the closed period ended. (Tr. 25, 48).

Moreover, the ALJ discounted the opinion of a state-agency psychiatric consultant based on this fundamental error. While the psychiatric consultant found that Martinez's ability to understand, remember, or apply information was moderately limited (Tr. 31–32, 122–35), the ALJ relied on a (false) completion of full-time cosmetology school in "August 2023" to conclude instead that this domain of mental functioning was mildly limited. (Tr. 23, 32).

So the ALJ's step-three and step-four reasoning expressly relied on the erroneous belief that Martinez had completed cosmetology school during the time in question. This alone warrants reversal. But even more, the ALJ relied on events well after the closed period with no apparent bearing on the claimant's RFC during that period. (Tr. 24, 29–30). These include the ALJ's repeated references to a roller-

skating incident in the Spring of 2024 (Tr. 21, 29), some eight months or more after the closed period. No reasonable person would accept the constellation of irrelevant facts and erroneous findings as adequate to support the ALJ's conclusion.[6]

## III. Conclusion

Upon consideration of the submission of the parties and the administrative record, the ALJ failed to properly analyze Martinez's claim for a closed period of disability, and substantial evidence does not support the ALJ's decision. Accordingly, the decision of the Commissioner should be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), and the clerk should be directed to enter judgment in Plaintiff's favor, terminate all scheduled events, and close the case.

Recommended on August 18, 2026

NICHOLAS P. MIZELL
United States Magistrate Judge

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions, or to request more time to do so. A party's failure to timely file written objections "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1. **To expedite resolution, parties may file a joint notice waiving the 14-day objection period.**

[6] Given the obvious failure of basic logic in the ALJ's decision, one is left to wonder how the parties' conferral failed to result in a voluntary remand. (Doc. 19 at 10). The conferral requirement is not a check-the-box exercise. Instead, it must involve a thoughtful assessment of plaintiff's points of error and the overall record.